ROBERT L. GRADY *vs.* COMMISSIONER OF CORRECTION
& others.[1]

No. 11-P-1871.

Plymouth. October 4, 2012. - January 18, 2013.

Present: CYPHER, KATZMANN, & MILKEY, JJ.

*Commissioner of Correction. Imprisonment,* Grievances. *Practice, Civil,*
Complaint.

In a civil action challenging a determination, two months earlier, by the
superintendent of the Massachusetts Treatment Center that the plaintiff
inmate was not entitled to have compact discs containing legal materials in
his cell, the judge properly dismissed the complaint as untimely filed,
where G. L. c. 127, § 38H, mandates that inmate grievances shall be
subject to judicial review in accordance with G. L. c. 30A, § 14, which in
turn provides for a thirty-day appeal period [129-133]; further, for purposes
of appealing a grievance decision to the Superior Court under G. L. c. 127,
§ 38H, the decision by the superintendent, and not the optional review by
the institutional grievance coordinator, constituted the requisite final deci-
sion [133-135].
This court concluded that an inmate's complaint challenging a determination
by the superintendent of the Massachusetts Treatment Center that the
inmate was not entitled to have compact discs containing legal materials in
his cell failed to set forth facts sufficient to warrant declaratory relief, in
that the inmate challenged an administrative decision relating to his particular
case. [135-137]

CIVIL ACTION commenced in the Superior Court Department on
March 11, 2010.

The case was heard by *Richard J. Chin,* J., on motions for
judgment on the pleadings.

*Robert L. Grady,* pro se.

*Deirdre Ann Hosler* for the defendants.

KATZMANN, J. Robert Grady, an inmate in the custody of the

---

[1]Superintendent, Massachusetts Treatment Center, and the institutional
grievance officer of the Massachusetts Treatment Center.

Massachusetts Department of Correction (DOC) and housed at the Massachusetts Treatment Center (MTC), filed a grievance complaining that he was not permitted to keep compact discs (CDs) containing legal documents in his cell. The principal issue in this appeal is whether inmate grievances are subject to judicial review in the Superior Court pursuant to G. L. c. 30A, § 14, which requires that a complaint be filed within thirty days of the final action complained of, or subject to G. L. c. 249, § 4, which sets out a sixty-day limitation period. We conclude that G. L. c. 30A, § 14, governs, and we affirm the dismissal, by a judge of the Superior Court, of the complaint as untimely filed. We further determine that as pleaded, Grady has not put forth a proper request for declaratory relief.

*Background.* On October 21, 2009, Grady filed a grievance (no. 43530) pursuant to the inmate grievance procedure outlined in 103 Code Mass. Regs. § 491.09 (2001), contesting a decision preventing him from storing CDs containing legal documents and court transcripts in his prison cell.[2] He alleged that he needed the CDs to prepare legal documents in pending cases.

On November 6, 2009, in response to Grady's initial grievance, the institutional grievance officer at the MTC granted "partial approval" to Grady's request and wrote that Grady would be "allowed to retain twelve legal CDs at a time."

Grady filed another grievance (no. 43746) on November 5, 2009, complaining that despite the institutional grievance officer's prior determination, other prison officers had prevented him from receiving a CD containing legal documents. Specifically, the Wareham Division of the District Court Department had sent Grady a CD of a previous hearing, and as a result of the delay in receiving the CD, Grady was unable to file a timely motion for reconsideration in connection with a case pending in that court. On December 30, 2009, the institutional grievance

---

[2]Title 103 Code Mass. Regs. § 403.10(7)(f) (2001) provides:

"Legal Documents — an inmate may possess a maximum of one cubic foot of legal documents or audio cassettes containing legal material in their assigned living quarters. If a written request is approved by the Superintendent, authorization to store legal material exceeding the one cubic foot limit may be obtained. Any authorized excess documents shall be stored in a predetermined storage area accessible to the inmate, not in the inmate living quarters."

officer, in contradiction of his prior decision of November 6, denied this grievance. Citing 103 Code Mass. Regs. § 403.10 (2001), the institutional grievance officer stated, "CD retention is not permitted within inmate living quarters due to the fact CDs are not authorized property items. In addition, only the Property Committee in conjunction with the Commissioner may approve supplementary property items, when requested in writing, in relation to security level."[3] On January 11, 2010, Grady appealed the decision to the superintendent of the MTC (superintendent), who in turn denied the appeal on January 12. In his decision, the superintendent stated that "[d]isks [sic] are contraband."

On March 11, 2010, Grady filed a complaint for judicial review in the Superior Court, appealing from the superintendent's grievance decisions and seeking certiorari review pursuant to G. L. c. 249, § 4, and declaratory judgment pursuant to G. L. c. 231A. Grady sought judgment reversing the grievance decision and declaring that the actions complained of violated his rights under the United States Constitution, 42 U.S.C. § 1983 (2006), and the Massachusetts Declaration of Rights. The defendants answered and filed the certified record of the administrative proceedings at issue. Grady and the defendants filed cross motions for judgment on the pleadings on August 3, 2010, and September 9, 2010, respectively. Grady then filed a reply to the defendants' motion for judgment on the pleadings, and attached a revised grievance decision dated July 2, 2010, that was not part of the certified record filed by the defendants. In this grievance determination, the acting director of administrative resolution for the DOC stated that she was reversing the superintendent's decision only insofar as that Grady could now store his law-related CDs in the law library at the MTC rather than in long-term storage. Because he was still not permitted to keep the CDs in his prison cell, Grady continued to pursue his appeal. Grady claimed that he needed to keep the CDs in his cell to preserve the confidentiality of the information contained on the CDs and to prevent their loss or theft.

---

[3]Title 103 Code Mass. Regs. § 403.10(4) sets forth "a master list of items approved for retention by inmates in general population in accordance with their security level." Compact discs (CDs) are not listed and were thus deemed contraband by the institutional grievance officer and the superintendent.

On July 13, 2011, a judge of the Superior Court held a hearing on the cross motions for judgment on the pleadings. The judge found that Grady had incorrectly appealed the grievance decision pursuant to G. L. c. 249, § 4, rather than G. L. c. 127, § 38H. He reasoned that "this court is satisfied that Grady's action is a request for judicial review of various *grievances* and is governed by G. L. c. 127, § 38H." The judge concluded that G. L. c. 127, § 38H, mandates that such grievances shall be subject to judicial review in accordance with G. L. c. 30A, § 14, which in turn provides for a thirty-day appeal period. Grady received notice of the superintendent's final decision as to his CD storage grievance on January 12, 2010. However, he did not file his complaint until March 11, 2010, well after the thirty-day filing period had passed.

Grady filed a motion for reconsideration, which was denied. This appeal ensued.[4]

*Discussion.* 1. *Statutory analysis.* The central question in this case is whether G. L. c. 127, § 38H,[5] requires judicial review of inmate grievances pursuant to G. L. c. 30A, § 14,[6] or whether,

---

[4]The judge found that Grady's appeal of a grievance related to his "mail monitor status" at the MTC was timely filed, and the judge ruled in Grady's favor on that count of the complaint. That portion of the judgment is not before us in this appeal.

[5]General Laws c. 127, § 38H, inserted by St. 1999, c. 127, § 133, provides:

> "A final decision with respect to a grievance shall be subject to judicial review in accordance with section 14 of chapter 30A, in the superior court for the county in which the inmate is incarcerated or otherwise being held, or in Suffolk county. . . . The availability of review under this section shall not be construed to limit any judicial remedies otherwise available."

[6]General Laws c. 30A, § 14, as amended by St. 1976, c. 411, § 1, provides in relevant part:

> "Except so far as any provision of law expressly precludes judicial review, any person or appointing authority aggrieved by a final decision of any agency in an adjudicatory proceeding, whether such decision is affirmative or negative in form, shall be entitled to a judicial review thereof, as follows:—

> "Where a statutory form of judicial review or appeal is provided such statutory form shall govern in all respects, except as to standards for review. The standards for review shall be those set forth in paragraph

despite the explicit language of G. L. c. 127, § 38H, such appeals must be brought pursuant to G. L. c. 249, § 4.[7]

We note at the outset that largely because of the way issues have been presented, prior unpublished decisions have not been uniform in their application of the relevant statutes governing the appeals of inmate grievances and inmate disciplinary proceedings. We write to provide clarity on the subject of inmate grievance appeals and to emphasize that only G. L. c. 30A, § 14, shall apply to such cases.

The Legislature has determined that inmate grievance appeals and inmate disciplinary appeals are to be governed by different statutes. An inmate grievance involves a challenge to a DOC regulation or policy and appeals from such decisions are governed

---

(7) of this section, except so far as statutes provide for review by trial de novo. Insofar as the statutory form of judicial review or appeal is silent as to procedures provided in this section, the provisions of this section shall govern such procedures.

"Where no statutory form of judicial review or appeal is provided, judicial review shall be obtained by means of a civil action, as follows:

"(1) Proceedings for judicial review of an agency decision shall be instituted in the superior court for the county (a) where the plaintiffs or any of them reside or have their principal place of business within the commonwealth, or (b) where the agency has its principal office, or (c) of Suffolk. The court may grant a change of venue upon good cause shown. The action shall, except as otherwise provided by law, be commenced in the court within thirty days after receipt of notice of the final decision of the agency or if a petition for rehearing has been timely filed with the agency, within thirty days after receipt of notice of agency denial of such petition for rehearing. Upon application made within the thirty-day period or any extension thereof, the court may for good cause shown extend the time. . . ."

[7]General Laws c. 249, § 4, as amended by St. 1986, § 95, provides in relevant part:

"A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the supreme judicial or superior court . . . . Such action shall be commenced within sixty days next after the proceeding complained of. . . . The court may at any time after the commencement of the action issue an injunction and order the record of the proceedings complained of brought before it. The court may enter judgment quashing or affirming such proceedings or such other judgment as justice may require."

by G. L. c. 127, § 38H. On the other hand, an inmate disciplinary appeal involves a challenge to a DOC determination in an official disciplinary proceeding, and appeals are governed by the certiorari statute, G. L. c. 249, § 4. A critical difference between these two statutes is the time period in which an inmate must file an appeal from an adverse decision. Under G. L. c. 30A, § 14(1), "[p]roceedings from judicial review . . . shall . . . be commenced in the court within thirty days after receipt of notice of the final decision of the agency . . . ." In contrast, under G. L. c. 249, § 4, "[a] civil action in the nature of certiorari shall be commenced within sixty days next after the proceeding complained of."

General Laws c. 30A, the State Administrative Procedure Act, "was enacted in part to establish minimum procedural standards for the conduct of adjudicatory proceedings as defined in the statute, while permitting those State administrative agencies covered by the act to develop and adopt additional procedural requirements. See Cella, Administrative Law and Practice § 501 (1986)." *Rinaldi* v. *State Bldg. Code Appeals Bd.*, 56 Mass. App. Ct. 668, 672 (2002). General Laws c. 127, § 38H, expressly provides that "[a] final decision with respect to [an inmate] grievance shall be subject to judicial review in accordance with [G. L. c. 30A, § 14]."

Despite the clarity of that directive, Grady challenges the application of G. L. c. 30A, § 14, to inmate grievance appeals because G. L. c. 30A, § 1A, inserted by St. 1972, c. 777, § 3, provides that "[t]he department of correction shall be subject to sections one through eight [of c. 30A], inclusive, and shall not otherwise be subject to this chapter, notwithstanding the exclusion of said department from the definition of the word 'agency' in section one."

In considering the apparent tension between G. L. c. 127, § 38H, and G. L. c. 30A, § 1A, we note that "the Legislature is presumed to be aware of existing statutes when it amends a statute or enacts a new one." *Commonwealth* v. *Russ R.*, 433 Mass. 515, 520 (2001), citing *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 582-583 (1994). Statutes dealing with the same subject should be interpreted harmoniously to effectuate a consistent body of law, and the more specific statute should control

over the more general one, so long as the Legislature did not draft the more general statute to provide comprehensive coverage of the subject area. See *Boston Hous. Authy.* v. *Labor Relations Commn.*, 398 Mass. 715, 718 (1986). Similarly, where two statutes conflict, the later statute governs. *Commonwealth* v. *Russ R.*, 433 Mass. at 521. In this case, we presume that when the Legislature enacted G. L. c. 127, § 38H, in 1999, it knew of the potentially conflicting language in G. L. c. 30A, § 1A, which it had previously enacted in 1972. See *Longval* v. *Superior Ct. Dept. of the Trial Ct.*, 434 Mass. 718, 718-719 (2001) ("In November, 1999, the Legislature enacted a series of statutes designed partially to stem 'frivolous' civil litigation by prisoners. In particular, the Legislature created G. L. c. 127, §§ 38E-38H," establishing grievance procedure for inmate complaints.

From the plain language of the State Administrative Procedure Act, it is apparent that the Legislature intended generally to protect the DOC from suits under G. L. c. 30A, § 14. Nevertheless, the Legislature subsequently decided that the provisions of c. 30A, § 14, including the thirty-day appeal period, should apply in the specific case of an inmate challenging a DOC grievance decision pursuant to G. L. c. 127, § 38H. When we compare G. L. c. 127, § 38H, and G. L. c. 30A, it is apparent that G. L. c. 127, § 38H, provides a more specific statutory scheme to address the review of inmate grievance appeals and thus, G. L. c. 127, § 38H, must control. See *Boston Hous. Authy.* v. *Labor Relations Commn.*, *supra.* In applying c. 30A, § 14, to the review of inmate grievance decisions in the Superior Court, the Legislature eliminated the need to write procedures into c. 127, § 38H. This legislative shorthand should not be read to create tension between the two statutes. In sum, while the Legislature originally exempted the DOC from G. L. c. 30A, the Legislature later tempered this exception when it enacted c. 127, § 38H. The Legislature then provided for judicial review of final decisions of inmate grievances in accordance with the process set forth in G. L. c. 30A, § 14.

Notably, this exception applies only to appeals from inmate grievance decisions. The language of G. L. c. 127, § 38H, excludes any mention of appeals from inmate disciplinary hearings.

Instead, those appeals are governed by the certiorari statute, G. L. c. 249, § 4. See *McLellan* v. *Commissioner of Correction*, 29 Mass. App. Ct. 933, 934 (1990); *Beryl* v. *Superintendent, Souza-Baranowski Center*, 55 Mass. App. Ct. 906, 907 (2002).

Thus, the judge did not err in dismissing Grady's appeal from the superintendent's grievance decision. Grady appealed under the wrong statute (G. L. c. 249, § 4, rather than G. L. c. 127, § 38H), and he filed the action well after the thirty-day deadline provided in G. L. c. 30A, § 14.

2. *Final administrative action.* Grady also contends that he filed a timely appeal to the Superior Court because the DOC did not issue a final administrative decision until the departmental grievance coordinator considered his appeal. See *Samuels Pharmacy, Inc.* v. *Board of Registration in Pharmacy*, 390 Mass. 583, 592 (1983) (court cannot have jurisdiction in dispute between individual and administrative agency until agency issues final decision). We disagree.

Under DOC regulations, an institutional grievance coordinator initially reviews an inmate grievance, and he or she must act on the grievance within ten working days of its receipt. See 103 Code Mass. Regs. §§ 491.09(3)(c), 491.10(1)(e) (2001). If the grievance is denied, the inmate may appeal to the superintendent. 103 Code Mass. Regs. § 491.12 (2001). The superintendent must "respond to the grievant in writing within 30 working days from receipt of the grievance." 103 Code Mass. Regs. § 491.12(3). If the superintendent denies the grievance, "the appeal package and any relevant documentation shall be forwarded to the departmental grievance coordinator. The departmental grievance coordinator may take any action upon review of a grievance that the superintendent is authorized to take . . . ." 103 Code Mass. Regs. § 491.13 (2001).

Whether the departmental grievance coordinator reviews a grievance is purely discretionary and thus cannot serve as the final administrative decision or action. In considering the defendants' argument that Grady filed an untimely appeal, we look to basic principles. First, "[t]he requirement of bringing an appeal within the time provided is jurisdictional; failure to observe the requirement robs the court of jurisdiction." *Rinaldi* v. *State Bldg. Code Appeals Bd.*, 56 Mass. App. Ct. at 671 (citing cases).

Second, "[t]he purpose of statutes limiting the period for appeal is to set a definite point of time when litigation shall be at an end, unless within that time the prescribed application has been made; and if it has not, to advise prospective appellees that they are freed of the appellant's demands. Any other construction of the statute would defeat its purpose." *Matton Steamboat Co.* v. *Murphy,* 319 U.S. 412, 415 (1943), cited in *Browder* v. *Director, Dept. of Correction,* 434 U.S. 257, 264 (1978) (interpreting Fed.R.A.P. 4[a]). Third, " 'attempted institution of an appeal seeking judicial review of an administrative decision after expiration of the period limited by a statute or rule' [is] a prime example of an error or omission 'seen on [its] face to be so repugnant to the procedural scheme, so destructive of its purposes, as to call for dismissal of the appeal.' " *Flynn* v. *Contributory Retirement Appeal Bd.,* 17 Mass. App. Ct. 668, 669 (1984), quoting from *Schulte* v. *Director of the Div. of Employment Sec.,* 369 Mass. 74, 79 (1975). Fourth, "[a] party who desires to extend the time for appealing from an agency decision may do so under § 14(1) by a *timely* petition for rehearing (in which case the § 14 appeal must be commenced within thirty days after receipt of notice of agency denial of the petition for rehearing) or by leave of court for good cause shown '[u]pon application made within the thirty-day period or any extension thereof.' G. L. c. 30A, § 14(1)." *Flynn* v. *Contributory Retirement Appeal Bd.,* supra at 670 (emphasis added).

In contrast to a petitioner who tolls the limitation statute under G. L. c. 30A, § 14, by filing a petition for rehearing, cf. *Flynn* v. *Contributory Retirement Appeal Bd.,* supra — which must be adjudicated — the applicable regulation here clearly states that "the departmental grievance coordinator *may take any action* upon review of a grievance" (emphasis added). 103 Code Mass. Regs. § 491.13. Moreover, unlike the regulations providing for grievance review by the institutional grievance coordinator and the superintendent, the regulation governing the departmental grievance coordinator neither includes any requirement that the coordinator provide notice to the inmate that his appeal will be considered nor requires that the coordinator consider the appeal within a certain period of time. As the defendants acknowledge, because the review by the departmental

grievance coordinator is discretionary, an inmate need not wait for the departmental grievance coordinator to conduct his or her optional review before filing an appeal in Superior Court. Thus, in light of the principles of finality and orderly consideration of adjudicatory determinations, we agree with the defendants that the optional review by the departmental grievance coordinator does not constitute a final administrative action or decision. For purposes of appealing a grievance decision to the Superior Court under G. L. c. 127, § 38H, the decision by the superintendent constitutes the requisite final action or decision.

3. *Declaratory judgment.* In his complaint, in addition to requesting certiorari review, Grady also requested, pursuant to G. L. c. 231A,[8] a judgment declaring that the regulation at issue violated his rights under the United States Constitution, 42 U.S.C. § 1983, and the Massachusetts Declaration of Rights. Because Grady has not raised this issue in his appellate brief, it is deemed waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Even if we were to consider the argument, however, we would conclude that on the instant complaint, Grady has failed to set forth facts sufficient to warrant declaratory relief.

"[A] complaint for declaratory relief is an appropriate way of testing the validity of regulations or the propriety of practices involving violations of rights, which are consistent and repeated in nature." *Nelson* v. *Commissioner of Correction,* 390 Mass. 379, 388 n.12 (1983). An inmate may bring suit to challenge such regulations or policies. *Ibid.* However, declaratory relief is not "an appropriate remedy where the validity of an adjudication by the board in an individual case is being challenged."

---

[8]General Laws c. 231A, § 1, inserted by St. 1945, c. 582, § 1, provides:

"The supreme judicial court, the superior court, the land court and the probate courts, within their respective jurisdictions, may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings and whether any consequential judgment or relief is or could be claimed at law or in equity or not; and such proceeding shall not be open to objection on the ground that a merely declaratory judgment or decree is sought thereby and such declaration, when made, shall have the force and effect of a final judgment or decree and be reviewable as such."

*Averett* v. *Commissioner of Correction*, 25 Mass App. Ct. 280, 287 (1988), *S.C.*, 404 Mass. 28 (1989).

In the past, we have heard appeals from prison disciplinary decisions where plaintiffs incorrectly brought declaratory judgment actions under G. L. c. 231A challenging the administrative decisions in their particular case. In these instances, we have considered the plaintiff's complaint "as a civil action in the nature of certiorari pursuant to G. L. c. 249, § 4," rather than as an action for declaratory judgment. *McLellan* v. *Commissioner of Correction*, 29 Mass. App Ct. 933, 934 (1990) (plaintiff failed to timely appeal determination from prison disciplinary hearing and then brought declaratory judgment action challenging underlying disciplinary determination). See *Puleio* v. *Commissioner of Correction*, 52 Mass. App. Ct. 302, 306 n.2 (2001) (among other forms of relief requested, plaintiff sought declaratory judgment that in sentencing him to ten days' detention in segregated disciplinary unit, DOC violated his due process rights).

As in *McLellan* and *Puleio*, Grady challenges an administrative decision relating to his particular case — namely the defendants' denial of his grievances (nos. 43530 and 43746) stemming from his request to store, in his cell, CDs containing legal materials. We are guided by our holding in *Averett*, 25 Mass. App. Ct. at 287, that "[t]he importance of the distinction [between relief under G. L. c. 231A and G. L. c. 249, § 4, or G. L. c. 127, § 38H,] is not found in the label attached to the pleading . . . ; rather, the nature of the grievance will determine the scope of judicial review." Here, Grady has cloaked his claim as a request for declaratory judgment. However, at its core, this claim is a fact-specific challenge to the defendants' decisions denying his grievances in his particular case. In his complaint, Grady has failed to raise or plead sufficient facts to establish that the regulation at issue has resulted in an ongoing, repeated violation of his constitutional rights.

Whereas, in *McLellan* and *Puleio*, we treated a request for declaratory relief in a prison disciplinary proceeding as a petition for certiorari under G. L. c. 249, § 4, in this case, we consider a similarly incorrect request for declaratory relief in an inmate grievance case as an appeal under G. L. c. 127, § 38H.

For the reasons set forth above, we deny Grady's request for relief as untimely.[9,10]

*Judgment affirmed.*

[9]This is not to say that Grady could not have filed a request for declaratory relief in this case. A plaintiff may file such a declaratory judgment action in addition to a request for relief under G. L. c. 127, § 38H. See *Samel* v. *Pittsfield Lic. Bd.*, 377 Mass. 908 (1979), quoting from *Meenes* v. *Goldberg*, 331 Mass. 688, 691 (1954) ("Commonly relief under this chapter [G. L. c. 231A] should not be denied because of the possibility of some other form of remedy, if the case presented comes within the general scope of the chapter and no special reasons exist against the use of the declaratory process"). See also *Madden* v. *State Tax Commn.*, 333 Mass. 734, 736-737 (1956) (declaratory relief may be afforded even though the plaintiff may have another remedy and even in cases where the other form of relief is, in statutory terms, an exclusive remedy). However, to make out a request for declaratory judgment, a plaintiff must plead sufficient facts that an administrative agency has "practices or procedures . . . in violation of the Constitution of the United States . . . which . . . has been consistently repeated." G. L. c. 231A, § 2, as amended by St. 1974, c. 630, § 1. It is not enough to claim a constitutional violation; rather, a plaintiff must plead a particular constitutional violation and demonstrate that such a violation extends beyond the plaintiff's individual case and is "consistently repeated" by the administrative agency.

We further note that if Grady had set forth a sufficient showing for declaratory judgment, which is an equitable remedy, then he need not have waited until a final agency action before filing suit in Superior Court. G. L. c. 127, § 38F, inserted by St. 1999, c. 127, § 133 ("An inmate shall not file any claim that may be the subject of a grievance under section 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E; but the court may consider such claim . . . for *actions seeking equitable relief*" [emphasis added]).

[10]The DOC has recognized that there is an ongoing trend in our legal system to store legal material on CDs, but the DOC sets forth the following defense of its policy: "CDs are easily broken into very sharp pieces that may be used as dangerous weapons by assaultive or self-injurious inmates. Broken CDs can also be used as tools to illegally alter other inmate or state property." The DOC policy banning inmates from possessing CDs in their cells is far from self-evident or uniformly followed throughout the country. For example, States such as Arizona, California, Connecticut, Kentucky, Nebraska, Nevada, and Tennessee allow inmates to store CDs in their cells. See Ariz. Dept. of Corrections, Dept. Order Manual Ch. 900, Dept. Order 909, "Inmate Property" (Jan. 6, 2012); Cal. Dept. of Corrections and Rehabilitation, Operations Manual, Art. 43, "Inmate Property" (Jan. 1, 2012); Conn. Dept. of Correction, Admin. Directive 6.10, "Inmate Property" (Apr. 15, 2010); Ky. Corrections Policies and Procedures 17.1, "Inmate Personal Property" (Aug. 6, 2012); Neb. Correctional Servs., Admin. Reg. 204.01, "Inmate Property Control" (Sept. 30, 2010); Nev. Dept. of Corrections, Admin. Reg. 711, "Inmate Property

Manual" (Oct. 27, 2011); Tenn. Dept. of Correction, Admin. Policies and Procedures 504.02, "Inmate Personal Property Accounting System" (Apr. 1, 2007). Each of these States has different regulations as to the number of CDs that an inmate may possess, the content of the CDs that an inmate may possess, and the systems for ensuring that the CDs do not pose a security threat.

We note that 103 Code Mass. Regs. § 403.25 (2001) provides that 103 Code Mass. Regs. §§ 403.00, the inmate property regulations, "shall be reviewed *at least annually* from the effective date by the Commissioner or his designee. The party or parties conducting the review shall develop a memorandum to the Commissioner with a copy to the Central Policy File indicating revisions, additions, or deletions which shall be included for the Commissioner's approval." (Emphasis added.) The DOC has not revised its inmate property policy since April 27, 2001. It still lists rather anachronistic items, such as a "Walkman," for listening to recordings. In its annual review of the regulation, the DOC might consider how developing technology, consistent with security needs, can promote the preservation of privacy of legal documents and reduce loss or theft of the CDs. While we give considerable deference to the administrative determinations of DOC officials regarding the preservation of internal security, see *Libby* v. *Commissioner of Correction,* 385 Mass. 421, 433 (1982); *Rasheed* v. *Commissioner of Correction,* 446 Mass. 463, 474, 476 (2006), their charge is to fashion a policy that protects DOC security interests and also considers the right to prepare for legal proceedings. See *LaChance* v. *Commissioner of Correction,* 463 Mass. 767, 776 (2012).