The pro se plaintiff, an inmate confined at the North Central Correctional Institution-Gardner (NCCI) in the custody of the Department of Correction (DOC), appeals from a judgment dismissing his complaint against the defendants, the Commissioner of Correction and seven NCCI officials. In his complaint, the plaintiff sought judicial review, pursuant to G.L.c. 127, § 38H, and various declaratory judgments, pursuant to G.L.c. 231A, in connection with the final decisions on two prison grievances he had filed after he was subjected, under the program engagement strategy (engagement strategy) utilized at NCCI, to the loss of various housing and employment privileges as a result of being terminated from the culinary arts program he was participating in. He also challenged the potential engagement strategy consequences he faces due to his decision not to participate in the DOC's sex offender treatment program (treatment program). Having conducted the required de novo review, we conclude that the claims arising from the plaintiff's grievances must be dismissed due to his failure to file for review by the thirty-day deadline. See G.L.c. 127, § 38H ; G.L.c. 30A, § 14(1). Likewise, the plaintiff's claim regarding the treatment program cannot be sustained, largely due to this court's decision in Lyman v. Commissioner of Correction, 46 Mass. App. Ct. 202 (1999). Having further concluded that the plaintiff waived his appeal of two interlocutory orders, one removing the defaults that had entered against the defendants pursuant to Mass.R.Civ.P. 55(a), 365 Mass. 822 (1974), and the other denying his request for the appointment of standby counsel to assist at the hearing on the defendants' motion to dismiss, we affirm the judgment.
Background. We review the allowance of a motion to dismiss de novo, accepting all factual allegations in the complaint as true and drawing all reasonable inferences therefrom in the plaintiff's favor. See, e.g., Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 223 (2011) ; Lipsitt v. Plaud, 466 Mass. 240, 241 (2013).
The plaintiff is incarcerated at NCCI, serving sentences for two convictions of rape of a child.[4] In January, 2015, he was placed in segregation and was issued a disciplinary report after multiple informants alleged that they had witnessed him engaging in sexual activity with another inmate. On April 9, 2015, he was found not guilty of that offense.
In the meantime, however, the issuance of the disciplinary report had resulted in a series of adverse consequences for Mackie. First, he was terminated from the culinary arts program in which he had been participating. His termination from that program, in turn, triggered further consequences under the engagement strategy, a program utilized at NCCI and other DOC facilities to increase inmate participation in recommended programming by awarding or withholding housing and employment privileges, depending on whether an inmate chooses to participate in the programs recommended for him. In Mackie's case, he lost his culinary job, preferred housing assignment, and work list seniority.
On March 16, 2015, Mackie filed a grievance (# 79486), challenging the imposition of the engagement strategy sanctions on multiple grounds and requesting reinstatement of both his work list and preferred housing list seniority, as well as a return to the culinary arts program. The grievance was initially denied by the institutional grievance coordinator, but, on May 20, 2015, the superintendent at NCCI partially approved Mackie's appeal of that decision and reinstated his work list and preferred housing list seniority. The superintendent declined to reinstate Mackie to the culinary arts program, however, noting that it had been determined that he had already successfully completed the program.[5] The following day, Mackie received a letter from NCCI's education principal congratulating him on his successful completion of the program and awarding him the related "boost" of ten days of additional good time credit. Mackie did not immediately file for judicial review of the superintendent's decision.
Instead, on May 31, 2015, he filed another grievance (# 81075), wherein, in his own words, he "repeat[ed] and re-allege[d] the complaints and remedies from the original grievance [# 79486]" and asserted that he should be readmitted to the culinary arts program so he could complete the second level. Grievance # 81075 was eventually denied by the grievance coordinator on grounds that Mackie had not been approved by the instructor for participation in the second level of the culinary arts program.[6] Then, on September 4, 2015, the superintendent at NCCI denied Mackie's appeal of that decision, stating as grounds: "This grievance ... is duplicative of [grievance # 79486]. You have already been provided with an answer as to your not being readmitted to the culinary arts program. You may consult the principal as to other alternatives for programming opportunities."
In April, 2015, while his grievances were ongoing, Mackie also had his annual classification meeting. At that time, he was notified that, having been identified as a sex offender, he had been recommended for participation in the treatment program. He was further notified that a refusal to participate in the treatment program could render him ineligible for both the culinary arts program and movement to a facility below medium security. Citing ongoing efforts to appeal his convictions, however, Mackie declined to participate. And, although there is no allegation in the complaint that, in fact, he has suffered any adverse consequences as a result of that decision, Mackie alleges, and the defendants do not appear to dispute, that he will.[7]
On October 7, 2015, Mackie commenced this action. His motion to serve the defendants by first class mail was allowed on January 20, 2016, after which, he alleges, he proceeded to serve each defendant with a summons and copy of the complaint by placing them in the mail on February 9, 2016. Approximately thirty days later, having not received any responsive pleadings, he then moved for the entry of defaults, pursuant to Mass.R.Civ.P. 55(a), against all defendants. On March 28, 2016, defaults entered against at least six of the defendants. Upon subsequent motion by the defendants, however, a judge (first judge) removed the defaults, then denied Mackie's motion to reconsider that decision. On May 2, 2016, therefore, the defendants filed their answer, in the form of certified copies of the records from the applicable grievance proceedings, along with a motion to dismiss the complaint. In response, Mackie opposed the motion to dismiss and moved for the appointment of "standby counsel" to represent him at any hearing on the defendants' motion. The first judge denied Mackie's request for counsel. Then, after a hearing, a second judge allowed the motion to dismiss as to all counts in the complaint. This appeal followed.
Discussion. 1. Waiver of issues. As a threshold matter, we consider Mackie's argument that the first judge erred by removing the defaults entered against the defendants. The matter, however, need not detain us for long, as Mackie failed to indicate that he was appealing from that order in his notice of appeal. He also failed to indicate that he was appealing the first judge's denial of his request for standby counsel. Neither issue, therefore, is before us for review. See Mass.R.A.P. 3(c), as appearing in 430 Mass. 1602 (1999) ("The notice of appeal ... shall, in civil cases, designate the judgment, decree, adjudication, order, or part thereof appealed from"); G.E.B. v. S.R.W., 422 Mass. 158, 173 n.13 (1996) ; Robinson v. Boston, 71 Mass. App. Ct. 765, 771 (2008).[8]
2. Untimely claims. An action seeking review of a final decision on a grievance must be commenced within thirty days of receipt of notice of the decision. See G.L.c. 127, § 38H ; G.L.c. 30A, § 14(1) ; Grady v. Commissioner of Correction, 83 Mass. App. Ct. 126, 131-134 (2013). Here, the relevant final decision was issued on May 20, 2015, when the superintendent of NCCI partially reversed the grievance coordinator's initial denial of grievance # 79486 and granted Mackie much of the relief he sought. Mackie received notice of that final decision on May 21, 2015, but did not seek judicial review until he filed this action on October 7, 2015.[9] Instead, he opted to file grievance # 81075, which, as he himself stated at the time, was duplicative of # 79486. "With extremely rare exceptions not relevant here, failure to timely file [within the thirty-day period mandated by G.L.c. 30A, § 14(1) ] is ... an absolute bar to a plaintiff's ability to obtain judicial review of a final [decision]." Herrick v. Essex Regional Retirement Bd., 68 Mass. App. Ct. 187, 190 (2007). See ibid. (it is "a defect in the nature of jurisdiction"). Accordingly, all of Mackie's claims, but for one-count V, which was properly asserted as a declaratory judgment action (see below)-were properly dismissed as time barred, as they were raised in and/or arose out of grievance # 79486. This includes any claims concerning the duplicative grievance # 81075, since it would render the thirty-day deadline meaningless if an inmate could avoid it by simply restating and re-alleging the complaints and requested remedies from the original grievance in a new one.
3. Application of the engagement strategy and participation in the treatment program. Mackie has requested various declaratory judgments, pursuant to G.L.c. 231A, with respect to the application of the engagement strategy and treatment program. The first issue that must be resolved, however, is whether those claims, notwithstanding the labels he put on them, are actually claims for relief under G.L.c. 127, § 38H. See Grady, 83 Mass. App. Ct. at 136 ("The importance of the distinction [between relief under G.L.c. 231A and ... G.L.c. 127, § 38H ] is not found in the label attached to the pleading ...; rather, the nature of the grievance will determine the scope of judicial review"). The distinction is of particular import here, as it was in Grady, because if they are claims for relief under G.L.c. 127, § 38H, they are, for the reasons discussed above, time barred and not subject to review. See id. at 129, 136.
In Grady, this court summarized what is and is not a claim for declaratory judgment:
" '[A] complaint for declaratory relief is an appropriate way of testing the validity of regulations or the propriety of practices involving violations of rights, which are consistent and repeated in nature.' Nelson v. Commissioner of Correction, 390 Mass. 379, 388 n.12 (1983). An inmate may bring suit to challenge such regulations or policies. Ibid. However, declaratory relief is not 'an appropriate remedy where the validity of an adjudication by the board in an individual case is being challenged.' Averett v. Commissioner of Correction, 25 Mass. App. Ct. 280, 287 (1988), S.C., 404 Mass. 28 (1989)."
Id. at 135-136. On the one hand, some of Mackie's "declaratory judgment" claims (counts I-IV) raise challenges to the application of the engagement strategy in the wake of his receipt of the disciplinary report and resulting termination from the culinary arts program. However, while the imposition of consequences under the engagement strategy proved to be unfortunate given the eventual not guilty finding entered on the disciplinary report, Mackie was granted most of the relief he sought for those alleged wrongs through his appeal of grievance # 79486 and "has failed to raise or plead sufficient facts to establish that the [engagement strategy] has resulted in an ongoing, repeated violation of his constitutional rights."[10] Id. at 136. The claims, therefore, are truly claims for relief under G.L.c. 127, § 38H, and were untimely.[11]
On the other hand, one of Mackie's claims (count V) raises constitutional and other challenges as to the application of the engagement strategy in the wake of his decision to not participate in the treatment program. At least on the surface, that claim involves an ongoing, repeated violation for declaratory judgment purposes due to the allegation that Mackie will not be allowed to progress to a facility below medium security unless he participates in the program. Nonetheless, the claim must still be dismissed, largely due to the decision in Lyman, 46 Mass. App. Ct. 202 (1999).
The plaintiff inmate in Lyman, like Mackie now, asserted a host of constitutional violations after he was denied a request to transfer from medium to minimum security due to his decision to not participate in the treatment program.[12] Id. at 204. The court rejected all of them. Like Mackie, Lyman raised double jeopardy and equal protection claims,[13] but the court found them wanting. Id. at 207-208. The court further reiterated that an inmate "enjoys no constitutionally protected interest in his expectation of a lower security status," ibr.US_Case_Law.Schema.Case_Body:v1">id. at 205-206, citing Meachum v. Fano, 427 U.S. 215, 227 (1976), a fact that is fatal to Mackie's due process claim. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (there must be infringement of a liberty interest, meaning an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," for due process protections to arise). See also Dominique v. Weld, 73 F.3d 1156, 1160-1161 (1st Cir. 1996) (even transfer of inmate from lower to higher security status does not implicate liberty interest for purposes of due process claim).[14] The Lyman court also effectively foreclosed Mackie's claim that, given the impact that nonparticipation might have on such things as his future parole eligibility, he is being wrongfully compelled to participate in the treatment program. See 46 Mass. App. Ct. at 205.[15] Mackie "may elect either not to seek parole or to seek parole and [participate in the treatment program]." Ibid., quoting from Quegan v. Massachusetts Parole Bd., 423 Mass. 834, 838 (1996). In either case, his decision regarding participation in the treatment program is voluntary.[16]
Conclusion. For the above reasons, there was no error in the judge's determinations. However, "[i]n declaratory actions, even where relief is denied, the rights of the parties must be declared." Williams v. Secretary of the Executive Office of Human Servs., 414 Mass. 551, 570 (1993). See Attorney Gen. v. Kenco Optics, Inc., 369 Mass. 412, 418 (1976). Therefore, the judgment as to count V of the complaint, relating to participation in the treatment program, shall be amended to declare that the application of the engagement strategy to the plaintiff after his decision not to participate in the treatment program is not unconstitutional or otherwise unlawful in the respects claimed by the plaintiff. As so amended, the judgment is affirmed.
So ordered.
As so amended, the judgment is affirmed.

Mackie's convictions were affirmed by an unpublished opinion of this court, see Commonwealth v. Mackie, 85 Mass. App. Ct. 1104 (2014), and further appellate review was denied. See Commonwealth v. Mackie, 467 Mass. 1106 (2014).

The superintendent also denied Mackie's additional requests for an award of the pay and good time credits he was unable to earn while the sanctions were in place.

In an electronic mail message, NCCI's education principal explained that, as part of a DOC-wide effort to shorten vocational programs at all institutions, participants were now deemed to have completed the culinary program upon finishing the first level, with instructor approval required to participate in level two.

General Laws c. 127, § 49, as appearing in St. 1996, c. 239, § 3, provides that "[n]o sex offender in the custody of the department of correction shall be eligible to participate in any program outside a correctional facility ... unless he has completed the [treatment program]." In addition, the form that DOC requires an inmate to read and sign to participate in the treatment program (attached to the plaintiff's complaint as Exhibit M) indicates that he will not progress beyond a medium security facility unless he participates in the program.

As Mackie is seeking judicial review of the final decisions on his grievances, those decisions are subject to review under G.L.c. 30A, § 14. See G.L.c. 127, § 38H ; Grady v. Commissioner of Correction, 83 Mass. App. Ct. 126, 129-133 (2013). Accordingly, the defendants were only required, by way of answer, to file an original or certified copy of the records from the grievance proceedings within ninety days of service. See G.L.c. 30A, § 14(4) ; Superior Court Standing Order 1-96, first and second pars. (2015). They did so and, as a result, should not have been defaulted in the first instance. Meanwhile, Mackie has not identified any authority to suggest that he was entitled to the appointment of standby counsel, never mind that the first judge committed reversible error in denying the request. Even if they were properly before us, therefore, we would affirm the two orders.

"Upon application made within the thirty-day period or any extension thereof, the court may for good cause shown extend the time." G.L.c. 30A, § 14(1), as appearing in St. 1973, c. 1114, § 3. To that end, Mackie alleges that he mailed to the Superior Court, within thirty days of receipt of the final decision on grievance # 79486, a motion to extend the filing deadline. There is no dispute, however, that the extension was never granted. In fact, there is no allegation or evidence that the motion was ever received, never mind acted upon, by the court. Nor is there any allegation or evidence that it was served on the defendants.

On appeal, Mackie has deviated from his complaint and offered entirely new bases for his equal protection and retaliation claims (counts III and IV). As such, those arguments are waived. See Albert v. Municipal Ct. of the City of Boston, 388 Mass. 491, 493-494 (1983) (party cannot raise argument for first time on appeal). Moreover, the arguments in the plaintiff's brief do not rise to the level of appellate argument, and we need not reach them. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

Mackie's claim that the defendants improperly extended the time to respond to his grievances on multiple occasions (count VI) was also untimely. Even if it was not time barred, however, we do not read the underlying statute and regulation as limiting the number of extensions to the extent that Mackie does. See G.L.c. 127, § 38E(a ) and (b )(1) ; 103 Code Mass. Regs. § 491.18 (2001).

Unlike Lyman, Mackie does not allege that he has been denied a transfer to a facility below medium security due to nonparticipation in the treatment program. As noted previously, however, there does not appear to be a dispute that, effectively, he is ineligible to make such a transfer. See note 6, supra. Accordingly, we assume, without deciding, that Mackie has alleged an "actual controversy" as required for a declaratory judgment claim under G.L.c. 231A, § 1.

While Mackie has asserted his equal protection attack on the treatment program under the so-called "kindness" statute, G.L.c. 127, § 32, the analysis is the same as that in the constitutional equal protection context. See Hastings v. Commissioner of Correction, 424 Mass. 46, 53 (1997).

For due process purposes, Mackie also does not have a "protected liberty interest" in employment or single-cell housing. See Bell v. Wolfish, 441 U.S. 520, 542-543 (1979) ; Murphy v. Cruz, 52 Mass. App. Ct. 314, 318-319 (2001).

The Lyman court viewed the compulsion issue in the self-incrimination context because, at the time, inmates were required to admit that they were guilty of their underlying sex offense(s) to participate in the treatment program. 46 Mass. App. Ct. at 204-205. Reportedly, that is no longer a requirement.

Mackie's claim that the defendants violated classification procedures by "compelling" him to participate in the treatment program (count VII) fails for the same reason. As a convicted "sex offender," he has merely been recommended for participation in the treatment program, as shown by the form attached to the plaintiff's complaint as Exhibit M. He has not been compelled to participate. Indeed, he has exercised his right not to.