NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-406

JEB DALY

vs.

MICHAEL RODRIGUES[1] & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Jeb Daly, a person in the custody of the Department of Correction (DOC) at the Massachusetts Correctional Institution at Shirley (MCI-Shirley), appeals from an order granting the defendants, Michael Rodrigues and the DOC, judgment on the pleadings on Daly's claims for damages, injunctive relief, and a declaratory judgment.  Daly alleged that the defendants violated his constitutional rights by determining the book, "Life of a Klansman" by Edward Ball (the book), contraband and by prohibiting him from possessing it.  We vacate the judgment and

_____

[1] Individually and in his official capacity as superintendent of the Massachusetts Correctional Institution at Shirley.

[2] Department of Correction.

remand the matter for further proceedings consistent with this memorandum and order.

Background.[3]  It is undisputed that Daly was not permitted to have a copy of the book, which he maintains was mailed to him by a citizen.  In his complaint, Daly argued that the book was an award-winning treatment of racial reconciliation and peaceful advocacy that had been promoted by "mainstream" media.  Daly also contended that, by contrast, "[e]xamples abound" of inflammatory media at MCI-Shirley.  For example, he alleged that the prison regularly played videos of Louis Farrakhan on the prison-sanctioned television channel "advocating hate of White People (AKA, 'the blue-eyed Devil')."  In addition, Daly alleged that history books available at the prison "contain content, photo images, and symbols that are equivalent to those in [the book], and they do not jeopardize institutional security."  To that point, at one hearing before a judge of the Superior Court, Daly held up a book titled, "Nigger,"[4] which he claimed was available in the MCI-Shirley library.

---

[3] For purposes of reviewing a motion for judgment on the pleadings, "all facts pleaded by the nonmoving party must be accepted as true," and "[w]e also may rely on 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'"  Mullins v. Corcoran, 488 Mass. 275, 281 (2021), quoting Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).

[4] "We use the epithet in full once for clarity, and to ensure that the topic is searchable in legal databases."

2

After the prison denied Daly the book, he pursued a grievance, arguing, among other things, that the book is not inflammatory, does not advocate violence, and cannot be banned by prison officials.  The deputy superintendent denied the grievance, and the superintendent affirmed the decision, concluding that the deputy "properly deemed the book contraband" because the "content, photo images and symbols in the book would jeopardize institutional security."

Following the denial of his grievance, Daly brought the present action, seeking relief under 42 U.S.C. § 1983 and G. L. c. 231A for violations of the First and Fifth Amendments to the United States Constitution and the Massachusetts Declaration of Rights.  His complaint also alleged that the defendants violated the DOC's regulation for incoming mail.  The defendants treated Daly's complaint as seeking judicial review of an inmate grievance and filed an answer pursuant to Superior Court Standing Order 1-96 (2020).[5]

---

Commonwealth v. Rodriguez, 101 Mass. App. Ct. 439, 440 n.3 (2022).

[5] Standing Order 1-96 governs "[c]laims filed in the Superior Court seeking judicial review of administrative agency proceedings on the administrative record pursuant to the standards set forth in G.  L. c. 30A, § 14, G.  L. c. 249, § 4, or similar statutes, whether joined with a claim for declaratory relief under G.  L. c. 231A, or any other claim."  Superior Court Standing Order 1-96(1) (2020).

Daly subsequently filed a motion for summary judgment, which he later supplemented with a list of book titles that seemed to show that the book was ordered by the library.  The defendants responded by filing a cross-motion for judgment on the pleadings.[6]  The defendants did not respond to Daly's statement of undisputed facts.  A judge of the Superior Court denied Daly's motion for summary judgment and granted the defendants' motion for judgment on the pleadings.  This appeal followed.

Discussion.  1.  Administrative review.  Though Daly's complaint did not cite G. L. c. 127, § 38E or G. L. c. 30A, § 14, it can be construed as seeking review of the decision denying his grievance because it challenges the decision as incorrect and arbitrary and capricious.[7]  See G. L. c. 30A, § 14 (7) (g) (in judicial review actions, court may set aside agency decision that is "[a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law").  Thus, Standing Order 1-96 applied because it applies to a complaint

_____

[6] The defendants argued in their cross-motion that judgment on the pleadings was the appropriate mechanism to resolve Daly's claims, citing Superior Court Standing Order 1-96(4) (2020) ("A claim for judicial review [of an administrative decision] shall be resolved through a motion for judgment on the pleadings . . . .").

[7] Final decisions regarding inmate grievances are "subject to judicial review in accordance with section 14 of chapter 30A."  G. L. c. 127, § 38H.

4

asserting multiple claims for relief if any one of them seeks judicial review of administrative proceedings. Nonetheless, we need not consider whether the judge's ruling on the propriety of the denial of Daly's grievance was correct because on appeal Daly has disavowed such claims unequivocally.

2. _Nonadministrative claims_. We turn now to Daly's claims for declaratory, injunctive, and other relief. Daly was entitled to seek declaratory relief in addition to a claim pursuant to G. L. c. 127, § 38H ("availability of review under this section shall not be construed to limit any judicial remedies otherwise available"). "Where an action for judicial review of an administrative decision is joined with nonadministrative claims, the nonadministrative claims are reviewed as in ordinary civil actions." Sullivan v. Superintendent, Mass. Correctional Inst., Shirley, 101 Mass. App. Ct. 766, 775 (2022).

"A motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c) is actually a motion to dismiss . . . [that] argues that the complaint fails to state a claim upon which relief can be granted" (quotation and citation omitted). Luu v. Fallon Serv., Inc., 105 Mass. App. Ct. 236, 239 (2025). "[W]e look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief." Curtis v. Herb Chambers I-95, Inc., 458

5

Mass. 674, 676 (2011).  We review the judge's order on the motion for judgment on the pleadings de novo.  See Sullivan, 101 Mass. App. Ct. at 775.

Daly argued in his complaint that the defendants are not applying a legitimate policy neutrally and thereby have violated his constitutional rights.  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Massachusetts Prisoners Ass'n Political Action Comm. v. Acting Governor, 435 Mass. 811, 819 (2002), quoting Turner v. Safley, 482 U.S. 78, 89 (1987).  There are four factors relevant to that inquiry:

> "(1) Is there a valid, rational connection between the regulation and the governmental interest put forward to justify it, and is the governmental interest legitimate and neutral; (2) do alternative means of exercising the challenged right remain open to inmates; (3) will accommodating the challenged right have a significant 'ripple effect' on guards, other inmates, and the allocation of prison resources in general; and (4) does an alternative to the regulation exist which would fully accommodate the inmates' rights at de minimis cost to valid penological interests?"

Cacicio v. Secretary of Pub. Safety, 422 Mass. 764, 770 (1996), quoting Turner, supra at 89-91.  Even if the prison has a regulation that is facially valid, the motion judge must conduct "an examination of the validity of the regulations as applied" to the book Daly seeks to possess in light of other media

6

available to inmates at MCI-Shirley.  Thornburgh v. Abbott, 490

U.S. 401, 419 (1989).[8]

Here, we conclude that Daly's complaint plausibly alleges

that the defendants are violating his constitutional rights by

allowing inflammatory media against one race to be distributed,

while not allowing Daly to possess anti-racist material that may

be perceived as inflammatory against another race.[9]  Taking these

allegations as true, as we must do at this stage, we conclude

that where the defendants have banned expression of one

potentially inflammatory viewpoint but have allowed the

expression of its counterpoint, it is plausible that the

---

[8] We recognize that to bring a request for declaratory judgment pursuant to G. L. c. 231A, regarding practices or procedures, "a plaintiff must plead a particular constitutional violation and demonstrate that such a violation extends beyond the plaintiff's individual case and is 'consistently repeated' by the administrative agency" (emphasis added).  Grady v. Commissioner of Correction, 83 Mass. App. Ct. 126, 137 n.9 (2013).  Here, reviewing the allegations in the light most favorable to Daly, as we must, he alleged repeated constitutional violations.  For purposes of deciding the motion for judgment on the pleadings, Daly alleged that the book was taken from him twice, that the prison denied him the book based on "photo images and symbols in the book [that] would jeopardize institutional security," that the library ordered the book but did not offer it to inmates, and that the prison has allowed numerous other instances of racially inflammatory material.  In any event, Daly also seeks injunctive relief.

[9] To the extent that the defendants' concern is that the outside cover of the book depicts a hooded Klansman, the Superior Court judge is better suited to determine in a Turner analysis whether a lesser measure than exclusion of the entire book would meet institutional needs.

7

defendants' ban of the book was not pursuant to legitimate penological interests.

To the extent that the judgment granted the defendants' motion for judgment on the pleadings on Daly's claims for judicial review of a final inmate grievance decision, it is affirmed. The judgment is otherwise vacated, and the matter is remanded for further proceedings consistent with this memorandum and order.[10]

So ordered.

By the Court (Henry, Hand & Brennan, JJ.[11]),

*Paul Little*

Clerk

Entered: June 26, 2026.

---

[10] Where we remand the case to the Superior Court to address Daly's nonadministrative claims, we need not address Daly's other arguments, including his claim that the defendants violated his due process rights or his contention that the DOC's incoming mail regulation is unconstitutionally vague.

[11] The panelists are listed in order of seniority.