James E. Lyman, Jr. *vs.* Commissioner of Correction
& others.[1]

No. 97-P-151.

Middlesex. October 13, 1998. - January 21, 1999.

Present: Warner, C.J., Greenberg, & Gillerman, JJ.

*Sex Offender. Imprisonment,* Reclassification of prisoner. *Constitutional Law,* Self-incrimination, Ex post facto law, Equal protection of laws, Double jeopardy.

A policy of the Department of Correction, 103 Code Mass. Regs. § 446.13.1, promulgated pursuant to the mandate of St. 1990, c. 150, § 104, which requires an inmate seeking to participate in a voluntary treatment program to sign an agreement admitting he is a sex offender, and which requires completion of all such programs before the inmate is eligible for a lower security classification, does not implicate either the Federal or State privilege against self-incrimination, where the inmate has no constitutionally protected interest in an expectation of a lower security status [204-206]; and there was no merit to claims that the policy was an ex post facto law [206-207], violated the equal protection clause [207], or constituted double jeopardy [207-208].

Civil action commenced in the Superior Court Department on December 5, 1995.

The case was heard by *Judith A. Cowin,* J., on a motion for summary judgment.

.    *James E. Lyman, Jr.,* pro se.

*Mary E. Murphy-Hensley,* Assistant Attorney General, for the defendants.

[1]Besides commissioner Larry DuBois, other defendants sued individually and in their official capacities are James Matesanz, superintendent of Bay State Correctional Center (BSCC); Peter St. Amand, deputy superintendent of BSCC; Joan Milch, director of classification at BSCC; Bonney McWilliam, a correctional program officer at BSCC; William Weld, then Governor of the Commonwealth; and Kathleen O'Toole, formerly Commissioner of Public Safety. Michael Kermette, a correction officer at BSCC, and the Department of Correction were sued in their official capacities.

GREENBERG, J. James E. Lyman, Jr., the plaintiff, is a prisoner at the Bay State Correctional Center at Norfolk. He is serving a sentence of from twelve to fifteen years (with an identical term of years to be served "from and after" that sentence). He brought this action for declaratory and injunctive relief to challenge as unconstitutional the policy of the Department of Correction of requiring an admission of guilt to the crimes for which he was sentenced as a condition to attaining a lower security classification. For the same alleged unconstitutional conduct, he seeks damages for violation of his civil rights. A Superior Court judge granted summary judgment to the defendants in a lengthy and thorough decision. The plaintiff appeals. We affirm.

We begin with an explanation of how the challenged policy came into play. On October 29, 1987, the plaintiff was convicted and sentenced on two indictments for rape of a child by force. In 1988, pursuant to G. L. c. 127, § 20, an initial classification hearing took place. The plaintiff was told that he would be eligible for parole in sixteen years and that after he had served eight years of his sentence, as long as he had maintained a good institutional record, he would be placed in a minimum security facility.

In 1990, more than two years after the plaintiff's classification hearing, St. 1990, c. 150, § 104 (act), was enacted, mandating that the commissioner of correction "develop a plan for a program of voluntary treatment services for sex offenders to be offered in facilities operated by the department of correction."[2]

On October 19, 1994, nearly seven years from the date the plaintiff began serving his sentence, the commissioner approved a policy for the treatment and movement of sex offenders from commitment to release. See 103 Code Mass. Regs. §§ 446.01 et seq. This policy was promulgated by the commissioner to ensure a continuation of treatment services for sex offenders from the time of commitment to eventual release upon parole or upon discharge from their sentences. Participation in the program was deemed "voluntary for all identified inmates, [but]

[2]The Legislature had a broader purpose in enacting St. 1990, c. 150, § 104, which was to eliminate any further commitments to the treatment center for sexually dangerous persons pursuant to G. L. c. 123A. Section 304 of the act repealed G. L. c. 123A, §§ 3 through 6, which authorized those commitments. Section 104 of the act provides that all persons previously committed to the treatment center remain subject to annual reviews, but that as of September 1, 1990, no further involuntary commitments were to take place.

no inmate identified as a sex offender [could] . . . move beyond medium security without successfully completing all programs" as set forth in the policy. See 103 Code Mass. Regs. § 446.07.[3]

The portion of the policy that the plaintiff especially finds objectionable is § 446.13.1, which denies transfer to a lower security facility to any inmate who remains "in denial of the offense(s)." In addition, he objects to a requirement that a participant sign a sex offender's treatment waiver agreement that contains an admission that he is a sex offender.

In his complaint, the plaintiff maintains that he did not commit the crimes for which he was convicted and he "is still working [in the Appeals Court and the Supreme Judicial Court] to overturn his convictions."[4] After a classification hearing on October 19, 1995, defendants Joan Milch (director of classification), Bonney McWilliam (correctional program officer) and Michael Vermette (correction officer) recommended denial of the plaintiff's request for transfer from medium to minimum security. On October 21, 1995, defendant Peter St. Amand, the deputy superintendent, acting for the Bay State Correctional Center's superintendent, James Matesanz, afforded the plaintiff no relief. Finally, upon review, the commissioner denied the plaintiff's request on the basis of his failure to participate in mandatory counseling.

With that background, we return to the sole question which

---

[3]Section 446.07 reads as follows:

"The Department of Correction is committed to the treatment of those individuals with a present indication or prior history of involvement in the commission of sex offenses. The ultimate goal of this policy is to create a system in which there is a continuum of service from the time an inmate with such a background is committed, until he/she is released to the community, and hopefully beyond. While this program is voluntary for all identified inmates, no inmate identified as a sex offender shall be permitted to move beyond medium security without successfully completing all programs outlined in section (.09) of this policy. Additionally, sex offenders placed in community correction institutions shall be required, as a condition of placement, to participate in the sex offender treatment aftercare programming outlined in section (.10) of this policy."

[4]On July 27, 1994, the defendant's convictions were affirmed by an unpublished opinion of this court pursuant to Rule 1:28 of the Rules of the Appeals Court. See 37 Mass. App. Ct. 1104 (1994). Further appellate review was denied on March 29, 1995. See 419 Mass. 1111 (1995).

this case presents: does the policy violate any of the plaintiff's constitutional rights? The language of § 446.13 of the policy,[5] the defendant argues, runs afoul of the Fifth Amendment's prohibition against coerced self-incriminating testimony and of art. 12 of the Massachusetts Declaration of Rights' prohibition against the compelled furnishing of evidence against oneself. He claims that participation in the program cannot be conditioned upon an admission of guilt from any inmate who might otherwise be eligible for transfer to a lower security facility.

In the present situation, we do not view the requirement that the defendant admit that he is a sex offender as a penalty which implicates either the Federal or State privilege against self-incrimination. This conclusion is based on *Quegan* v. *Massachusetts Parole Board*, 423 Mass. 834, 837-838 (1996), decided by the Supreme Judicial Court while the instant case was on appeal. There, a prisoner claimed that the parole board penalized him for exercising his constitutional right of freedom from compelled self-incrimination under both the Fifth Amendment to the Constitution of the United States and art. 12 of the Massachusetts Declaration of Rights. Like the plaintiff, Quegan argued that if he were to admit his guilt, "he would be prejudicing his position if a judge were to grant him a new trial." 423 Mass. at 837. The court rejected this argument and concluded that denial of parole is not a penalty for Fifth Amendment purposes, and therefore when a prisoner "is denied parole [he] is not punished for his unwillingness to admit his guilt." 423 Mass. at 837. Further, under art. 12 "[t]he pressure on a prisoner seeking parole to admit responsibility for his crime does not compel the prisoner to admit his guilt. He may elect either not to seek parole or to seek parole and not admit his guilt." 423 Mass. at 838. "In neither case" could it be said that "he is compelled to furnish evidence against himself." *Ibid.*

In these circumstances, not only does the plaintiff fall short of establishing a self-incrimination claim, but as a threshold matter, he enjoys no constitutionally protected interest in his expectation of a lower security status. *Meachum* v. *Fano*, 427

[5]Section 446.13, sub par. 1, reads as follows: "In all cases, for inmates participating in the program at the secure facility level, if determined to be program failures, these inmates shall not be permitted to transfer to a lower security institution within the Community Correction Division. Program failures shall include those inmates who refuse to participate or minimize with regard to their offense(s), and also those inmates who remain in denial of the offense(s)."

U.S. 215, 227 (1976). The Supreme Court in *Meachum* held that a prisoner's expectation of residency in a particular prison "is too ephemeral and insubstantial to trigger due process protections." *Id.* at 228. Similarly, the plaintiff here has no protected liberty interest in minimum security conditions which, unlike the prisoners in *Meachum*, he has not yet enjoyed. See *Dominique* v. *Weld*, 73 F.3d 1156, 1160-1161 (1st Cir. 1996) (inmate has no protected liberty interest in remaining in work release program and may be moved to medium security facility). See also *McMorrow* v. *Little*, 109 F.3d 432, 436 (8th Cir. 1997) ("prison officials may constitutionally deny benefits to a prisoner who, by invoking his privilege against self incrimination, refuses to make statements necessary for his rehabilitation, as long as the [prison officials'] denial is based on the prisoner's refusal to participate in his rehabilitation and not his invocation of his privilege").

We may conclude from the mandate of St. 1990, c. 150, § 104, and the legitimate treatment goals expressed in 103 Code Mass. Regs. § 446.07 (1994), a policy assumption by the correction officials that an offender's acknowledgment of having committed a sexual offense is essential for rehabilitation and transfer to a nonsecure setting. Even if the precise reasons for this policy decision remain debatable, the plaintiff has failed to establish a deprivation either under the State or Federal Constitutions. "There is a crucial distinction between being deprived of a liberty one has . . . and being denied a conditional liberty that one [merely] desires." *Greenholtz* v. *Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 9 (1978).

We are handicapped — and, so far as appears from the record, so was the motion judge — by not having been furnished with citations in support of the plaintiff's other constitutional claims. So far as he argues that the policy violates State and Federal guarantees against ex post facto laws, the claim is without merit. Ex post facto laws encompass laws that inflict a greater punishment than the law imposed for the same crime when it was committed. See *Dominique* v. *Weld*, 73 F.3d at 1162. However, the ex post facto clause pertains only to "punishments inflicted," *Martel* v. *Fridovich*, 14 F.3d 1, 3 (1st Cir. 1993), in other words, to statutes that are penal in nature. *Opinion of the Justices*, 423 Mass. 1201, 1225 (1996); *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, 421 Mass. 1, 6 (1995). The sex offender treatment policy at issue in

this case has been determined by the United States Court of Appeals for the First Circuit, with which we agree, to be essentially remedial and not punitive in nature. "[U]nless and until [a sex offender] successfully completes the prescribed treatment program and admits to a crime he has continually denied, he must remain confined at no less than a medium security facility and remain ineligible for privileges associated with lower security imprisonment." *Dominique* v. *Weld*, 73 F.3d at 1163. The changes in conditions occasioned by the policy are a permissible alteration in the prevailing "legal regime" rather than an "increased penalty," in that such changes do not affect the length of a prisoner's sentence or his parole options. *Ibid.*

The contention that the policy violates the equal protection clause because it results in a bias against prisoners convicted as sex offenders does not entitle the plaintiff to relief. The distinction between sex offender inmates and other inmates, in terms of classification, is subject to the rational relationship test in which inquiry is limited to whether the "challenged distinction rationally furthers [a] legitimate, articulated state purpose." *McGinnis* v. *Royster*, 410 U.S. 263, 270 (1973); *McNeil* v. *Commissioner of Correction*, 417 Mass. 818, 827 (1994). The sex offender treatment policy satisfies the "rational basis" test because no suspect classification is involved and the policy of denying lower security placement to those who refuse to participate in the program serves the legitimate State interests of rehabilitating offenders and protecting community safety. See *Abany* v. *Fridovich*, 862 F. Supp. 615, 621 (D. Mass. 1994). See also *Mahfouz* v. *Lockhart*, 826 F.2d 791, 794 (8th Cir. 1987) (the State's decision to distinguish sex offenders as a group from other inmates and exclude them from the work release program is rationally related to the legitimate government purpose of preventing sex crimes and thus does not violate the equal protection clause).

The plaintiff also claims that his constitutional right against double jeopardy was violated. The double jeopardy clause of the Fifth Amendment to the United States Constitution protects against a second prosecution for the same offense, either after acquittal or after conviction, and multiple punishments for the same offense. *Luk* v. *Commonwealth*, 421 Mass. 415, 419 (1995). Here, the plaintiff was not tried again for the same offense at his classification hearing. To show that the plaintiff should be identified as a sex offender for classification purposes,

pursuant to 103 Code Mass. Regs. § 446.08.1.A (1994), the review board relied on his conviction for forcible rape. The classification did not, as we have shown, result in multiple punishments. Neither the length of his sentence nor his parole options were affected. Compare *Dominique* v. *Weld,* 73 F.3d at 1163.

Other arguments the plaintiff presents on appeal concerning the legality of the sex offender treatment policy are presented in a conclusory form without any legal citations. Consequently, these claims do not rise to the level of appellate argument as required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 919 (1975), and therefore are deemed to be waived. *Commonwealth* v. *Bowler,* 407 Mass. 304, 310 (1990).

*Judgment affirmed.*