Trainor, J.
On cross-motions for summary judgment, the judge allowed the plaintiff’s motion for summary judgment on count IV of the complaint and the defendants’ motion for summary judgment on the remaining counts. In granting summary judgment on count IV, the judge “declare[d] that [North Central Correctional Institution’s (NCCI)] policy of terminating inmates from the Gar *508 den Program as a result of guilty findings violates the prohibition against imposing more than one sanction per offense contained in 103 Code Mass. Regs. § 430.25 [2006].”[2] The defendants appeal from the allowance of summary judgment on count IV. We review the allowance of a motion for summary judgment de novo. Alicea v. Commonwealth, 466 Mass. 228, 234 (2013).
The material facts are not in dispute. The plaintiff, an inmate in NCCI during all relevant times, was a participant in NCCI’s garden program, which is a leisure program, in the spring of 2011. The plaintiff was charged with and pleaded guilty to at least three different disciplinary offenses that occurred on different days between April 6 and May 13, 2011. The plaintiff received a sanction for each separate disciplinary offense, all of which were category three offenses. See 103 Code Mass. Regs. § 430.24 (2006). For the offense that occurred on April 6, the plaintiff was sanctioned in the disciplinary proceeding with disciplinary detention. For the offense that occurred on April 14, the plaintiff was sanctioned in the disciplinary proceeding with “loss of leisure program” for thirty days. For the offense that occurred on May 13, the plaintiff was sanctioned in the disciplinary proceeding with a disciplinary detention.
After the plaintiff returned from the disciplinary detention for the incident on April 6, he was terminated from his employment in the weight room. Similarly, after the plaintiff returned from his disciplinary detention for the incident on May 13, he was terminated from the garden program.
In granting summary judgment on count IV, the judge reasoned that the plaintiff’s termination from the garden program was an impermissible double sanction under 103 Code Mass. Regs. § 430.25(3) because being suspended from a leisure program is a possible disciplinary sanction for a category three offense.[3] We *509 disagree.
Prison officials have the duty and obligation to maintain security in the prison. See G. L. c. 124, § 1(b), as amended by St. 1996, c. 151, § 283 (Commissioner of Correction shall “maintain security, safety and order at all state correctional facilities”). It has also been recognized that “[t]he department [of correction] need not wait until specific breaches of safety and security arise to take reasonable measures . . . based on the exercise of professional judgment, to guard against the undermining of its unusually important goals.” Rasheed v. Commissioner of Correction, 446 Mass. 463, 474 (2006). See Nelson v. Commissioner of Correction, 390 Mass. 379, 392 (1983), quoting from Bell v. Wolfish, 441 U.S. 520, 547 (1979) (“In determining if these regulations are adequate to safeguard the Federal due process rights of prisoners, we recognize that the [United States] Supreme Court has held that prison officials ‘should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security’ ”); Kenney v. Commissioner of Correction, 393 Mass. 28, 35 (1984), quoting from Wolff v. McDonnell, 418 U.S. 539, 566 (1974) (although discretion is not unlimited, “ ‘[t]he operation of a correctional institution is at best an extraordinarily difficult undertaking’ and, therefore, we have recognized that prison administrators have broad discretion in the administration of prison affairs”); DuPont v. Commissioner of Correction, 448 Mass. 389, 398 (2007), quoting from Turner v. Safley, 482 U.S. 78, 86 (1987) (“The commissioner’s determination that the use of a [department of disciplinary unit] is necessary to the safe, secure, and orderly operation of some prisons, but not others, is the type of determination ‘peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to [security] considerations, courts should ordinarily defer to their expert judgment in such matters’ ”); Matthews v. Rakiey, 38 Mass. App. Ct. 490, 496 (1995) (“[A] prison’s internal security is peculiarly a matter normally left to the discretion of prison administrators. In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than the specific facts surrounding a particular incident. . . . The judgment of prison officials in this context, like that of those making parole decisions, turns largely on purely subjective evaluations and on predictions of future behavior” [quotations and *510 citations omitted]).[4]
The garden program gives inmates access to dangerous instru-mentalities. Given the potential security risk, prison officials in their professional judgment created the garden program rules. The rules require that an inmate be terminated from the program after a guilty finding for any disciplinary report and give the prison administration discretion to terminate an inmate from the program at any time.[5]’[6] Prison officials may use their professional *511 judgment and decide to terminate a prisoner from the garden program to ensure the safety of the prison. The process created for terminating an inmate from the garden program is separate from a disciplinary proceeding in which, once the inmate’s guilt is determined, one sanction may be imposed. See 103 Code Mass. Regs. § 430.25.
Sanctions for category three offenses are provided in 103 Code Mass. Regs. § 430.25(3), which states:
“(3) Sanctions for each Category 3 offense are as follows: (a) Disciplinary Detention for up to ten days; (b) Up to 60 days loss of a privilege, including but not limited to one of the following: television, radio, canteen, either visits or phone *512 privileges, hot pots, and leisure programs; (c) Cell or housing restriction for up to ten days; (d) Restitution, including, if applicable, any medical treatment assessment under M.G.L. c. 124, § l(s); (e) Prohibition from replacing any altered appliance for up to four months; (f) Up to 15 hours of extra duty. No more than one sanction shall be imposed per offense and no more than three sanctions (in addition to restitution) may be imposed for all offenses arising out of any one or substantially related incidents in which the highest offense(s) alleged is from Category 3.”[7]
We recognize that “[o]nce an agency has seen fit to promulgate regulations, it must comply with those regulations,” even if a matter is generally within the agency’s discretion. Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983). See Haverty v. Commissioner of Correction, 437 Mass. 737, 762 (2002), S.C., 400 Mass 1 (2003); Ivey v. Commissioner of Correction, 88 Mass. App. Ct. 18, 25-26 (2015). However, here, neither termination from employment nor termination from the garden program are sanctions that can be applied to an inmate under the disciplinary process.[8] As a result, neither of these actions is an additional sanction under the regulations.[9] Furthermore, it is clear from the Deputy Superintendent’s affidavit that the goal in terminating the plaintiff from the garden program was not punishment for the *513 offenses to which he pleaded guilty, but maintaining a secure and safe environment within the institution.
Accordingly, the portion of the judgment allowing summary judgment for the plaintiff on count IV is reversed, and judgment is to enter allowing summary judgment for the defendants on that count. In all other respects, the judgment is affirmed.

So ordered.

 The judge also declared “that the defendants have not otherwise violated the plaintiff’s rights or the Department of Corrections Regulations.” The judge further concluded that whether the plaintiff could participate in the garden program was moot because the “growing season ha[d] long passed.” The judge nevertheless reached the merits because the issue whether a prisoner can be terminated from the garden program after a guilty finding falls within an exception to the mootness doctrine as it is “capable of repetition, yet evading review.” Karchmar v. Worcester, 364 Mass. 124, 136 (1973), quoting from Southern Pac. Terminal Co. v. Interstate Commerce Commn., 219 U.S. 498, 515 (1911).

 The judge further reasoned that termination from employment is not an impermissible double sanction and is apparently within the discretion of prison officials.

 The dissent is premised on the idea, without either citation to statute or case law, that prison officials are granted no discretion beyond their promulgated rules, regulations, and policies. The dissent’s premise, however, is not based on and is substantially different from our settled authority that prison officials have no discretion to violate their regulations once promulgated. See Ivey v. Commissioner of Correction, 88 Mass. App. Ct. 18, 25 (2015) (“However, the limits of such discretion are established by the rules and regulations promulgated by the Department of Correction. DOC regulations carry the force of law and are binding, and the defendants are required to comply with their terms” [quotations and citations omitted]).

 The Deputy Superintendent for Programs and Treatment (Deputy Superintendent) of NCCI stated in her affidavit that security concerns require that “inmates who present management and/or disciplinary problems may not participate in the garden program” because such inmates have access to tools and rocks.

 Rule 26 of the 2011 Inmate Garden Rules (rule 26) states: “Inmates will be terminated from the garden program upon a guilty finding for any disciplinary report and/or any violation of garden rules. Participation in the garden program is a privilege and the Administration may use its discretion to remove any inmate from the program at any time whether or not a disciplinary report is issued. Inmates terminated from the program forfeit their slot and may apply for readmission via the lottery system for the next season.” Under this rule, the plaintiff should have been terminated from the program after his first disciplinary guilty finding. The failure of prison officials to terminate the plaintiff’s participation in the program however created no prejudice against him. This failure does not deprive the administration of its ability to make a discretionary determination based on its promulgated policy and a security analysis of the situation surrounding a specific inmate. Whether the inmate has disciplinary infractions and guilty findings is irrelevant if it is a security risk to allow the inmate to continue in a program or in employment.
The dissent’s assertion that the defendants did not rely on rule 26 as a basis for terminating the plaintiff from the garden program is not consistent with the statement of the Deputy Superintendent. The Deputy Superintendent stated in her affidavit that after being released from his “disciplinary detention sanction,” the plaintiff “was verbally notified that he was terminated from the inmate garden program.” Her affidavit further stated that “[t]he garden program at NCCI is operated in a large, fenced off area of the prison. Inmates who are selected for the program have access to a variety of gardening tools. Large rocks separate the garden plots. As such, due to institutional security concerns, *511 inmates who present management and/or disciplinary problems may not participate in the garden program. In this case, [the plaintiff] received a disciplinary report in April, 2011 for being verbally abusive to staff and then another disciplinary report in May, 2011 for being out of place. Through his misconduct, he exhibited an inability or unwillingness to follow institutional rules, and it was necessary to terminate him from the garden program.” (Emphasis added.) She went on explain that similar to the garden program, “good behavior is a condition of employment. Inmates may hold jobs at the discretion of prison administration. ... An inmate can be removed from a work assignment even without receiving a disciplinary report. ... In my experience as a corrections professional, it is imperative that prison administrators have full authority to terminate an inmate from a work assignment. A prison job is a position of trust conferred by the prison administration.” It is clear from the totality of her affidavit that prison administrators do not consider termination from employment or from the garden program as a punishment and certainly not as a disciplinary sanction. The Deputy Superintendent described both discretionary actions as authorized by promulgated rules and necessary to maintain institutional security. Contrary to the dissent’s representation, the Deputy Superintendent specifically refers to both the 2011 Inmate Garden Rules and the Institution Work Assignments policy in her affidavit. The defendants appeal from the judge’s declaration that the NCCI “policy of terminating inmates from the Garden Program because of guilty findings violates the prohibition against imposing more than one sanction [per offense] contained in 103 Code Mass. Regs. § 430.25.” The judge ruled that rule 26 is a violation of 103 Code Mass. Regs. § 430.25. In contrast, we hold that the garden program rules that allow prison officials to terminate an inmate from the garden program in their discretion or require them to terminate the inmate after a guilty finding and the imposition of a sanction pursuant to § 430.25 are not an impermissible double sanction. Termination from a leisure program, like termination from employment, is not a possible sanction under the regulation. The defendants have discretion to implement policies “needed to preserve internal order and discipline and to maintain institutional security.” Nelson v. Commissioner of Correction, 390 Mass. at 392, quoting from Bell v. Wolfish, 441 U.S at 547. The action taken here was pursuant to a promulgated policy which did not violate any promulgated regulations.

 The regulations relevant here are not a model in drafting and should be updated for the benefit of clarity and certainty. The regulations related to disciplinary proceedings should clearly identify the right of prison officials to take actions outside of the disciplinary process as needed to maintain security.

 The dissent asserts that the term sanction is not defined in the regulations. However, its meaning is obvious within the context of 103 Code Mass. Regs. § 430.25, which specifically states in each subsection that “Sanctions for each Category [1, 2, 3, or 4] offense are as follows” (emphasis added). After listing the possible sanctions for each category and within the same subsection concerning that category of offenses, § 430.25 specifies that “[n]o more than one sanction shall be imposed per offense.” It is a reasonable inference from the plain language of the regulation that a sanction includes only those that are listed and available to be used as part of the disciplinary proceeding. See Ten Local Citizen Group v. New England Wind, LLC, 457 Mass. 222, 228 (2010) (“We ordinarily accord an agency’s interpretation of its own regulation considerable deference” [quotation and citation omitted]); Ivey v. Commissioner of Correction, 88 Mass. App. Ct. at 24 (“Under the regulations, sanctions for each category of offense ‘are as follows’ [emphasis supplied], 103 Code Mass. Regs. § 430.25 [2006]”).

 The judge properly concluded that loss of prison employment or participation in the garden program does not implicate a liberty or property interest.