NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-1015

RASHAD RASHEED

vs.

COMMISSIONER OF CORRECTION & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On December 13, 2019, plaintiff Rashad Rasheed, an inmate

in the custody of the Department of Correction (department) and

housed at the Massachusetts Correctional Institution at Concord,

filed a complaint seeking declaratory, equitable, and monetary

relief, stemming from the consequences imposed on him pursuant

to the department's "Program Engagement Strategy" (PES). A

judge of the Superior Court allowed the defendants' motion to

dismiss and then denied the plaintiff's motion for

reconsideration. The plaintiff now appeals from the judgment

and the order denying the motion for reconsideration.[2] We affirm

---

[1] Former superintendent, former director of treatment, and correctional program officer at the Massachusetts Correctional Institution at Concord.

[2] The plaintiff does not raise any separate arguments with respect to the denial of his motion for reconsideration, and we therefore do not address it.

the judgment in part, vacate it in part, and remand for further proceedings.

Background. 1. PES program. "In accordance with its mission to 'promote public safety by managing offenders,' the department established 'appropriate programming in preparation for [inmates'] successful reentry into the community,' such as the Sex Offender Treatment Program (SOTP)." Butler v. Turco, 93 Mass. App. Ct. 80, 81 (2018). The department is unable to mandate participation in such programs, and "a high percentage of offenders declined to attend recommended programs." Id. Accordingly, in 2013, "the department announced it would implement PES, an incentivization structure for program participation. Under PES, privileges are awarded as incentives for inmates who voluntarily participate in programs and are withdrawn from inmates who refuse." Id. at 82.

2. Plaintiff's complaint.[3] In 1975, the plaintiff was sentenced to life imprisonment for rape, kidnapping, and armed robbery. In 1987, while incarcerated, the plaintiff voluntarily sought sex offender treatment and was ultimately found not to be a "sexually dangerous person" (SDP). Between 1989 and 1993, the plaintiff participated in various sex offender treatment

---

[3] We briefly summarize the material facts, drawn from the plaintiff's complaint and viewed in the light most favorable to him, reserving additional facts for later discussion.

programs and a recovery training drug treatment program. In or around 2016, the department recommended that the plaintiff participate in an SOTP, which he refused to do. In addition, the department recommended that he participate in Correctional Recovery Academy (CRA), a substance use treatment program, which he also declined. As a result of his refusal to participate, in 2019, the department informed the plaintiff that in accordance with PES policy, he was at risk of losing his privileges. After he failed to attend an SOTP, the department confiscated the plaintiff's "television, table radio, hot pot, [and] fan, moved [the plaintiff] to [new housing] and prohibited [the plaintiff] from working and earning . . . goodtime credits and other programs." The plaintiff filed informal and formal grievances, which were denied, then filed a complaint in the Superior Court, which was dismissed. The plaintiff's motion for reconsideration of that decision was denied.

Discussion. We review the allowance of a motion to dismiss de novo, reading "the complaint's allegations generously and in the plaintiff's favor." Lalchandani v. Roddy, 86 Mass. App. Ct. 819, 822 (2015), quoting Vranos v. Skinner, 77 Mass. App. Ct. 280, 287 (2010). Under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), the judge must allow a motion to dismiss if the complaint fails to allege sufficient facts, stating a recognized cause of action, to plausibly suggest that the plaintiff is

3

entitled to relief.  See <u>Iannacchino</u> v. <u>Ford Motor Co</u>., 451 Mass. 623, 636 (2008).

The plaintiff argues that PES transforms SOTPs into mandatory programs, which is inconsistent with various statutes allowing for the creation of voluntary programs, as well as department regulations.[4]  This argument fails, as the plaintiff, a convicted sex offender, has been recommended for participation in the treatment program; he has not been compelled to participate.  Indeed, he has exercised his right not to participate.  See <u>Lyman</u> v. <u>Commissioner of Correction</u>, 46 Mass. App. Ct. 202, 205 (1999) (impact that nonparticipation might have on such things as future parole eligibility does not amount to wrongful compulsion).  The withholding of such privileges does not constitute punishment.  See <u>Butler</u>, 93 Mass. App. Ct. at 86 (labeling PES as "remedial" policy, not punishment).

Next, the plaintiff argues that because a psychiatrist determined in 1987 that he was not an SDP, it was improper for the department to identify him as a sex offender or recommend that he participate in an SOTP.  In making this claim, the plaintiff conflates the related, but separate, concepts of SDP and sex offender.  An SDP is defined in G. L. c. 123A, § 1, as a

---

[4] Specifically, the plaintiff argues PES is inconsistent with G. L. c. 127, § 49; St. 1990, c. 150, § 104; G. L. c. 124, § 1 (<u>c</u>)-(<u>g</u>), (<u>q</u>); and G. L. c. 30A, § 1A.

4

person "who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility."  A sex offender, on the other hand, is defined in the department's sex offender management policy, 103 Department of Correction Regulations (DOC) § 446 (2015), as "[a]n inmate . . . who has ever been convicted of a sex offense defined by M.G.L. c. 6, § 178C, regardless of whether the inmate will be required to register with the Sex Offender Registry Board upon release from custody." Simply put, the definition of sex offender is broader than the definition of an SDP.  Hence, one may be a sex offender, even if they have not been adjudicated an SDP.[5]

As the plaintiff was convicted of rape, the department properly classified the plaintiff as a sex offender for purposes of recommending an SOTP.  The fact that he participated in some treatment years ago does not mean he completed an SOTP. Similarly, it was proper for the department to recommend that the plaintiff participate in the CRA, regardless of his past participation in a program, because department policies require

---

[5] We are also unpersuaded by the plaintiff's argument that PES should not be applied retroactively to him, as the department is permitted to update its policies and practices over time, otherwise "each inmate would be subject to individualized regulations according to his incarceration date."  Butler, 93 Mass. App. Ct. at 86 n.12.

follow-up to be conducted after an inmate has completed a substance use treatment program.  103 DOC § 445.05 (2019).[6]

The plaintiff also contends that the DOC's sex offender management policy, 103 DOC § 446, and PES are "regulations," which must be promulgated or amended pursuant to G. L. c. 30A. He then argues that because the department did not adhere to the statute in amending a previous version of the sex offender management policy, or in announcing PES, those policies are improperly promulgated regulations that are unenforceable.

General Laws c. 30A generally defines the term "regulation" and then creates several exemptions.  The general definition is:

> "'Regulation' includes the whole or any part of every rule, regulation, standard or other requirement of general application and future effect, including the amendment or repeal thereof, adopted by an agency to implement or interpret the law enforced or administered by it, but does not include [certain exempted items]."  G. L. c. 30A, § 1 (5).

Here, there is no dispute that the sex offender management policy and PES both fall within the definition of "regulation." The dispute concerns whether they fall into the internal management exemption, G. L. c. 30A, § 1 (5) (b), which exempts from the general definition any "regulations concerning only the

---

[6] To the extent that the plaintiff argues that PES violates his due process rights, is an ex post facto law, violates his Fifth Amendment right against self-incrimination, or violates his Eighth Amendment right to be free from cruel and unusual punishment, the motion judge did not err in dismissing his complaint.  Butler, 93 Mass. App. Ct. 83-89.

6

internal management or discipline of the adopting agency or any other agency, and not substantially affecting the rights of or the procedures available to the public or that portion of the public affected by the agency's activities."

After the briefs in this case were submitted to the panel, this court issued Haas v. Commissioner of Correction, 103 Mass. App. Ct. 1 (2023). In Haas, supra at 2-3, we concluded that an inmate complaint alleging that a standard operating procedure (SOP) of the DOC was a regulation concerned more than the internal management or discipline of DOC and stated a claim sufficient to survive a motion to dismiss. The SOP at issue in Haas, supra at 14-15, restricted disbursement of funds from inmates' institutional accounts and "appear[ed] to substantially affect[] the rights of all DOC inmates, who are certainly a portion of the public affected by the agency's activities" (quotations and citation omitted). We also noted that the SOP "appear[ed] to substantially affect the procedures available to inmates" (quotation and citation omitted). Id. at 15.

Here, as in Haas, the question is whether both the sex offender management policy and PES may fall under the internal management exemption. DOC inmates "are certainly a portion of the public affected by the agency's activities" (quotation omitted). Haas, 103 Mass. App. Ct. at 15, quoting G. L. c. 30A, § 1 (5) (b). In addition, the plaintiff, by claiming that he is

7

subject to the loss of job, housing, and seniority privileges, and that he has had possessions taken away, has alleged sufficient facts to support an inference that the policies substantially affect "the rights of or the procedures available" to inmates.  G. L. c. 30A, § 1 (5) (b).  We therefore conclude that portions of counts one, two, and five of the verified complaint state a claim, sufficient to survive a motion to dismiss, that the sex offender management policy and PES are regulations, and not having been promulgated as such through G. L. c. 30A procedures, are unenforceable.

Conclusion.  So much of the judgment as dismissed the portions of counts one, two, and five claiming that the sex offender management policy and PES are invalid because they were not promulgated as regulations under G. L. c. 30A is vacated, and those aspects of counts one, two and five are remanded for further proceedings.  In all other respects, the judgment is affirmed.

So ordered.

By the Court (Milkey,
  Massing & Henry, JJ.[7]),

Joseph F. Stanton

Clerk

Entered:  August 31, 2023.

---

[7] The panelists are listed in order of seniority.